# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4881 | **DATE** | 11/4/2004 |
| **CASE TITLE** | Mighty vs. Glenview Community Consolidated School Dist No. 34 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/7/2005 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ruling held. **ENTER MEMORANDUM OPINION:** The District's motion (Doc 4-1) to dismiss the complaint is denied. Defendant is given 14 days to answer the complaint. All discovery to be completed by March 7, 2005.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV – 5 2004 | 9 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 2004 NOV -4 PM 2:32 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | ) | |
|---|---|---|
| LORI S. MIGHTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 4881 |
| | ) | |
| GLENVIEW COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 34, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Glenview Community Consolidated School District No. 34 ("the District") to dismiss the complaint of Plaintiff Lori Mighty pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth below, the motion is denied.

## BACKGROUND

The complaint contains the following allegations, all of which we must presume to be true for purposes of this motion. Mighty, an African-American woman, taught Spanish to seventh- and eighth-grade students at Springman Middle School, a school within the District, from January 1999 until June 2002. The conduct of which Mighty complains originated in two incidents in late 1999, when she disciplined a white

student for using racial slurs in her presence. The student's parents objected to the discipline, and the school administration informed Mighty that she could no longer discipline that student. During the 1999-2000 school year, Mighty's recommendations for discipline of other students were routinely ignored by the administration. She also received phone calls and email messages from parents, which prompted the administration to require her to attend several meetings to address complaints from her students' parents.

At some point thereafter, Mighty "expressed her opinion" that the complaints were racially motivated. Although her pleading does not specify when or to whom this opinion was expressed, it apparently resulted in several changes in Mighty's employment environment in the 2001-2002 school year. During that year, Mighty was not allowed to teach in the eighth grade the students who had been in her seventh-grade Spanish classes the year before (a process called "looping"). Mighty was given no permanent home classroom but was required to move back and forth between the main school building and a mobile classroom throughout the school day. She was forbidden to leave the campus during her free period. She was required to attend quarterly meetings with school and union personnel. Her schedule was posted in a newsletter and in a classroom. Parents could withdraw their children from her class at any time during the school year. When Mighty wished to discuss a student's achievement with

his or her parents, the administration would not allow her to meet with them until a white teacher also requested a meeting with the parents.

For most of her employment at Springman, formal reviews of Mighty's work had been favorable. In March 2002, she received an unfavorable performance evaluation. She was told that she had to sign the evaluation within 48 hours of receiving it or her employment would be terminated. She was also informed that she would be required to attend a workshop and read remedial materials before the 2002-2003 school year began. Finally, she was told that in the following school year, social workers would visit her classes to monitor her performance, and she would be required to have professional mentors.

In June 2002, Mighty resigned and obtained a different teaching job in another district. At approximately the same time, she filed a charge of race discrimination and retaliation with the EEOC. The agency engaged in unsuccessful conciliation attempts, and Mighty received notice of her right to sue in May 2004. She filed the instant complaint that July.

The District now moves to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), contending that Mighty has not stated a claim upon which relief can be granted.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts that set forth the essential elements of the cause of action. Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir. 1996). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we examine the motions at hand.

## DISCUSSION

Mighty's claim is based in Title VII, alleging discrimination and retaliation. Both causes of action require that a plaintiff plead and ultimately prove as part of the prima facie case that his or her employer took some kind of adverse action against the plaintiff. See, e.g., Hudson v. Chicago Transit Auth., 375 F.3d 552, 559 (7th Cir.

2004) (retaliation); Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1011 (7th Cir. 2004) (discrimination). While of course there are other elements that comprise a Title VII claim, the District has challenged the sufficiency of Mighty's allegations only with respect to the adverse action component, and we similarly limit our consideration.

To qualify as an adverse employment action, an employer's conduct must materially affect the terms, conditions, or privileges of the plaintiff's employment. 42 U.S.C. § 2000e-2(a)(1). Adverse employment actions need not take clear-cut forms such as reductions in pay or benefits or demotion. See Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465-66 (7th Cir. 2002). They can be subtle, and materiality often depends on the circumstances of a particular job. See Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 612-13 (7th Cir. 2001); Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir. 1999); Bryson v. Chicago State Univ., 96 F.3d 912, 916 (7th Cir. 1996). Both qualitative and quantitative changes in the specifics of the plaintiff's situation can be considered in making a determination of materiality. See Haugerud v. Amery Sch. Dist., 259 F.3d 678, 691 (7th Cir. 2001). In other words, particularly at the pleading stage, where we do not have a clear context in which to place the specifics of the plaintiff's individual situation, a generous definition of "adverse employment action" is appropriate. See Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003).

Here, Mighty asserts a variety of actions taken by the District that allegedly worked to her disadvantage. First, she was forbidden to discipline a particular student and then her disciplinary recommendations as to other students were ignored. In addition, she was required to attend meetings to address parental complaints and to learn to get along with parents. These allegations apparently underlie her discrimination claim, in addition to other more amorphous claims of lack of support by the District in the face of parental complaints. The authority to discipline students who disrupt classes or violate school rules is an important part of fostering an environment that is conducive to learning. The ability to maintain order within the classroom is a crucial aspect of a teacher's job. Construing the allegations of the complaint in the light most favorable to Mighty, this claimed undermining of Mighty's authority before students could constitute a material change in the terms or conditions of her employment.

The remainder of the events to which the complaint draws attention all followed Mighty's expression of her opinion that the actions of the parents and the District were racially motivated. Consequently, we read them in the context of the standards governing claims of unlawful retaliation.

Mighty asserts that, after she complained about the alleged racial basis of the treatment she was receiving, her classroom and team assignments were changed to

prevent her from looping with the seventh graders she had previously taught. Depending on the particulars of employment at Springman, this could be seen as a denial of career opportunities, which, in certain circumstances, can constitute an adverse employment action. See Patt v. Family Health Systems, Inc., 280 F.3d 749, 753 (7th Cir. 2002). Mighty's lack of a permanent home classroom required her to go back and forth between buildings during the school day, and she was forbidden from leaving the campus, singling her out before the student body and her fellow faculty members. Furthermore, Mighty received an unsatisfactory performance evaluation that was accompanied by a threat of possible termination. Although that did not come to pass, the evaluation was to be followed with mandatory workshop attendance, remedial reading, social worker site visits to her classes and mandatory mentoring from other teachers. By itself, a negative performance evaluation is not actionable, but coupled with other things, it can be. See Grube v. Lau Industries, Inc., 257 F.3d 723, 729 (7th Cir. 2001). Here, Mighty has alleged more than the simple fact of the negative evaluation. Whether in her particular circumstances what she has alleged will ultimately prove to be enough to establish an adverse action is not a question that we need to ask at this stage of the proceedings.

Most importantly, parents were allegedly allowed to remove their children from her classroom, and her ability to schedule conferences with parents was severely

curtailed. In the context of a retaliation claim, even small inconveniences can be sufficient as evidence of an adverse action. See, e.g., McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 483-84 (7th Cir. 1996) (finding inconvenience of discontinued hand delivery of forms sufficient to show an adverse action). Moreover, a multitude of small slights added up can spell a campaign of harassment that will provide an adequate basis for a claim of retaliation. See generally Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). Adverse action in this context can be shown by anything that would dissuade a reasonable employee from seeking statutory protection when faced with a situation similar to the plaintiff's. See Johnson v. Milwaukee Sch. of Engineering, 258 F. Supp. 2d 896, 906-07 (E.D. Wis. 2003). Construing Mighty's allegations as indicating a singling out that compromised her status as an authority figure, it is not difficult to imagine other teachers thinking twice before complaining of discriminatory behavior for fear of similar treatment. This is sufficient to withstand a 12(b)(6) challenge.

## CONCLUSION

Based on the foregoing analysis, the District's motion to dismiss the complaint is denied.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: NOV - 4 2004